F. W. HARRISON v. C. E. SCHOFF, JR., and M. SNYDER, Appellants.

**Principal and Agent:** PURCHASE MONEY LIEN. One who sells land for one thousand seven hundred dollars under an ageement that the purchaser shall pay one thousand four hundred and fifty dollars in cash and give a first mortgage for such amount to a specified person from whom he was to borrow it, and give a second mortgage for the two hundred and fifty dollar balance, is entitled to a first lien on the land for the two hundred and fifty dollars, where such purchaser conveys it to the person from whom he was to borrow the money, who claims that such purchaser acted as his agent in making the purchase and that he had no knowledge of the agreement to pay more than one thousand four hundred and fifty dollars. If the sale was made to the lender, it was because the actual purchaser was his agent acting for an undisclosed principal, and the principal having attempted to take advantage of the acts of the agent, is charged with the burdens of the contract made by him.

*Appeal from Poweshiek District Court.*—HON. BENJAMIN McCOY, Judge.

THURSDAY, APRIL 8, 1897.

SUIT in equity to recover the balance of the contract price of a half interest in a certain newspaper plant, and to establish the amount thereof as a lien upon the property. Judgment and decree for plaintiff, and defendants appeal.—*Affirmed.*

*D. W. Norris* and *W. R. Lewis* for appellants.

*Haines & Lyman* for appllee.

DEEMER, J.—The claim of plaintiff, in substance, is that, for the consideration of one thousand seven

hundred dollars, agreed to be paid, he sold and delivered to defendant C. E. Schoff, Jr., the undivided one-half interest in and to a certain printing and publishing establishment, one thousand four hundred and fifty dollars of which consideration was to be paid in cash, and the balance to be represented by notes secured by second mortgage upon the plant, or by sureties acceptable to plaintiff; that said defendant paid the cash payment at the time the property was delivered to him, and agreed to give the promised second mortgage; that Schoff represented to plaintiff that he obtained the cash payment from his co-defendant, Snyder, and had promised to give him (Snyder) a mortgage upon the plant to secure the re-payment of the same; that defendant Schoff refused to complete his contract by executing the mortgage and notes to plaintiff, claiming that the property was purchased by Snyder, and that he (Schoff) had no interest or title therein which he could mortgage; that Schoff was put in the actual possession of the plant, and is now operating the same in conjunction with his father, who owns the other half-interest; that plaintiff did not sell the property to Snyder, and, if Schoff was acting as agent for Snyder in the purchase of the property, such fact was unknown to plaintiff, and such claim is now interposed by the defendants for the purpose of cheating and defrauding plaintiff out of the balance of the purchase price agreed to be paid. The prayer of the petition is for judgment for the sum of two hundred and seventy-four dollars, and that such judgment be made a lien upon the undivided one-half interest in the printing establishment. The defendants filed separate answers, Schoff alleging that plaintiff sold the property to Snyder for the sum of one thousand four hundred and fifty dollars, and the further promise of Schoff to pay the sum of two hundred and fifty dollars. He denies that he was to borrow

the one thousand four hundred and fifty dollars:
from Snyder, but says that he represented that he:
could buy the property from Snyder for one thousand
four hundred and fifty dollars in the event plaintiff
sold to Snyder; that he was to pay plaintiff the two
hundred and fifty dollars and execute the mortgage
in the event he purchased from Snyder, and not other-
wise.   He further says that he is in possession of the
property as a lessee from  Snyder, with an agreement
that he is to pay rent until such time as he is able to
make a reasonable cash payment thereon; that the
contingency upon which he was to pay the two hun-
dred and fifty dollars has not happened, and that he
is in no manner indebted to plaintiff; that it was
agreed between himself and plaintiff to conceal the
fact that he was to pay the extra two hundred and
fifty dollars, for the purpose of inducing Snyder to buy;
and that plaintiff knew that Snyder was the real pur-
chaser, or was to obtain the title from Schoff.   Snyder
says in his answer, in effect, that he purchased the
property from plaintiff for the agreed consideration of
one thousand four hundred and fifty dollars, which
amount he has paid, and denies all the allegations of
plaintiff's petition inconsistent with this claim.   He
further says that he never agreed to sell the property
to Schoff, and that Schoff is in possession under a lease,
and in no other manner.   He further pleaded that he
knew nothing of the agreement made by Schoff to pay
the extra two hundred and fifty dollars, and that, if
such contract was made, it was concealed from him,
with intent to induce him to make the purchase; that
he would not have made the purchase had he known
of such contract; that plaintiff knew he was to take
title direct or through a mortgage giving him a first
lien; and that, with such knowledge, he sold the prop-
erty direct to this defendant, and thus put it out of
the power of Schoff to make the second mortgage.

Snyder's prayer is that he have judgment for costs, and be decreed to be the absolute owner of an undivided one-half of the property.

This somewhat lengthy statement of the issues is made to help to a better understanding of the questions arising as we proceed with the case. These questions are largely of fact, and the controlling one is, who in fact was the purchaser of the property? On this issue there is a direct conflict in the evidence, and, without setting it out or quoting therefrom in detail, it is sufficient to say that we are constrained to believe that Schoff was the purchaser of the property under a contract substantially as claimed by the plaintiff in his petition. A memorandum of the contract was written out by Schoff during the negotiations, which was signed by plaintiff and Schoff, which shows a sale to this defendant upon the terms and conditions recited by plaintiff in his petition, and, at the time the first payment of money was made, plaintiff gave Schoff a receipt for the payment as purchaser. All of the written evidence in the case corroborates the plaintiff. True, both Schoff and Snyder say that Snyder was the purchaser. But Schoff's testimony is unsatisfactory and contradictory, and, in the face of his written declarations to the contrary, is not entitled to much weight. It is no doubt true that Snyder did not know what Schoff agreed to pay plaintiff for the property, and was led to believe that it was one thousand four hundred and fifty dollars, and it may be that, if he was relying upon a mortgage given pursuant to the agreement between plaintiff and Schoff, plaintiff's claim should either be defeated or held inferior to that of Snyder. But such is not his attitude. He claims to have purchased the property direct from plaintiff for the sum of one thousand four hundred and fifty dollars, without knowledge that Schoff had agreed to pay the extra two hundred and fifty dollars. We have

seen that he was not the purchaser of the property from plaintiff; that plaintiff sold to Schoff under the agreement before stated; and that defendant Snyder is attempting to take anvantage of the purchase. If allowed to do this, it must be on the theory that Schoff was his agent in the sale, and, if so, he must be charged with all the burdens of the contract. He cannot adopt the contract in so far as it is beneficial, and repudiate all its burdens. It is true that the plaintiff and Schoff concealed from Snyder the fact that the purchase price was to be one thousand seven hundred dollars, instead of one thousand four hundred and fifty dollars; but this was done at Schoff's request, for the reason that he was afraid Snyder would not loan him the money with which to make the purchase, if he knew of this fact. This fact is immaterial to the issues as presented, for the reason that the fraud, if any, under the facts found and the issues as presented, was that of Snyder's agent, and the agreement was not made in contemplation of a sale to Snyder. If there was a sale to Snyder, as claimed by him, it was through Schoff, who was acting as the agent of an undisclosed principal; and the rule is well settled that such a principal takes the contract charged with all its burdens. Mechem, Ag. page 527, sections 148-150, 697. If the plaintiff had conspired with Schoff, as the agent of Snyder, to commit a fraud upon him (Snyder), there is no doubt that he could not recover the two hundred and fifty dollars, but there is no evidence that plaintiff knew that Schoff was buying for Snyder. Plaintiff understood he was selling to Schoff individually, and believed that Schoff was to procure one thousand four hundred and fifty dollars from Snyder, the re-payment of which was to be secured by a mortgage upon the plant. Schoff, as the purchaser of the property, was also to give plaintiff a note for two hundred and fifty dollars, secured by second mortgage

upon the property, or otherwise; and it was the promise to give this two hundred and fifty dollars that was concealed from Snyder. Snyder is not now relying upon a mortgage for the one thousand four hundred and fifty dollars. Had he purchased from Schoff without knowledge of the contract as to the two hundred and fifty dollars, the case might be different. But such is not his claim.

It is said in argument, however, that the court was in error in establishing the judgment it rendered against Schoff, as a lien superior to any claim, title, or interest of Snyder, for the reason that the facts pleaded and the prayer of the petition do not entitle the plaintiff to any such relief. The petition charges a sale to Schoff under the agreement before stated, and also alleges that Snyder is claiming a sale to him. It further says that defendants have entered into a conspiracy to cheat and defraud the plaintiff out of two hundred and fifty dollars, and asks judgment for this amount, with twenty-four dollars, interest paid; that the judgment be made a lien upon the property; and for further equitable relief. The answers in effect deny the sale to Schoff, claim that it was made to Snyder for one thousand four hundred and fifty dollars, without knowledge on his part of the agreement of Schoff to pay two hundred and fifty dollars, which agreement, it is claimed, was that of Schoff alone, and defendant Snyder prays that he be decreed to be the owner of the property. With such issues and such a prayer on the part of Snyder, it is clear that plaintiff's claim could not be established as a second lien upon the property. Snyder holds no mortgage from Schoff. If he ever held an equitable one, it has been merged in the legal title. Snyder has been in possession of the property, as owner, since the latter part of the year 1894, and has received the rents and profits thereof. Under the issues as presented, there was no

way in which the court could determine how much he should be charged on account of these rents, in the event a lien was declared in his favor. His claim was that of owner. Under such circumstances, it is well to inquire what relief a court of equity can give plaintiff under the issues as tendered, except to establish his claim as a lien upon the property. If defendant Snyder had asked that a lien be established in his favor, the plaintiff would then have had the right to an accounting of the rents and profits; but to an answer claiming such absolute ownership no such reply would have been permitted. The relief granted was the only efficacious remedy which the court could give, and it was entirely justified by the pleadings. The decree was right, and it is AFFIRMED.