UTILITIES HOLDING CORPORATION, Appellee, v. PEARL M. CHAPMAN, Appellant.

No. 40271.

September 22, 1930.

*J. C. France*, for appellant.

*Donnelly & Lynch*, for appellee.

Albert, J.—This litigation grew out of the following situation: H. R. and Pearl M. Chapman were husband and wife. The Davenport & Tipton Independent Telephone Company had 1,300 shares of common and 160 shares of preferred stock, owned as follows: H. R. Chapman, 1 share of common stock; E. R. Chapman, 2 shares; Charles Foy, 10 shares; and the defendant, Pearl M. Chapman, 1,287 shares. The preferred stock was all owned by Pearl M. Chapman. In the latter part of 1925, or the early days of January, 1926, W. J. Brownell sought an option to purchase this telephone company, and a written option therefor was signed by Brownell and H. R. Chapman on January 6, 1926, reciting that Brownell had an option to purchase

130 shares of common stock and 16 shares of preferred for $215,000, on or before May 15, 1926. Among other things contained in said option was a provision that Chapman placed the annual approximate gross income of the property at $100,000. In a supplemental statement, made on January 7th following, Chapman represented that 130 shares of common and 20 shares of preferred stock constituted all of the issued and outstanding stock of the company. Upon the signing of this latter instrument, Brownell paid the sum of $1,000 for the option. It is shown by the evidence that, in all that Brownell did, he was acting for the Utilities Holding Corporation, appellee, his undisclosed principal.

The Utilities Holding Corporation brings this action in its own name, and the evidence shows that, while the contract is signed by Brownell, the company furnished the money to make the down payment, and in fact he was acting for the company in this purchase. When this condition exists, it is the contract of the plaintiff, and it is the real party, and has a right to maintain an action: *Shields v. Coyne*, 148 Iowa 313; *Temple v. Pennell*, 123 Iowa 729; *Young v. Lohr*, 118 Iowa 624; *Darling v. Noyes*, 32 Iowa 96; 2 Corpus Juris 874.

As soon as this contract was signed, a public accountant was employed by the plaintiff, to audit the books and records of the said company, for which it paid the sum of $498.34. In the report of the accountant, it was disclosed that, instead of there being 130 shares of common stock outstanding, there were 1,300 shares, some owned by other parties, and that instead of 16 (20) shares of preferred, there were 160 shares. The report also disclosed that, instead of $100,000, the approximate annual gross income of the company was only a few dollars over $50,000.

Plaintiff alleges, and its testimony shows, that, had the facts in the case been such as represented, it would have exercised its option herein and carried out its contract, but that, on the discovery of the above facts, it notified the defendant that it refused to exercise or go further with the option, and demanded the return of the $1,000 paid and the $498.34 paid to the public accountant for auditing the books and records of the company.

This being refused, the plaintiff brought this action, to recover for both of said items.

The defense was a general denial of liability.

The court directed a verdict for the plaintiff for the $1,000 and interest, and the jury returned a verdict for the defendant on the second claim. Later, this jury verdict was set aside on  motion, and a new trial granted as to the item of $498.34, the claim for the auditing of the telephone company's books and records. The defendant appeals.

H. R. Chapman died within less than a month after the signing of this option contract.

It is first urged upon our attention that the directed verdict for $1,000 for the plaintiff was error; and the principal reason urged therefor is that Pearl M. Chapman was the real owner of practically all of both the common and the preferred stock, and that she was not a party to this option, and is not bound thereby.

It would be of no value to set out the testimony in this case on this proposition; but, suffice it to say, we have studied the record with care, especially the examination and cross-examination of the defendant, and under the same, we can see no reason why the court was not correct in directing a verdict against Pearl M. Chapman for this $1,000 and interest. Her testimony shows that she knew, at all times, that this option was being given; that she allowed her husband to represent her in transacting all of the business in connection therewith; and that the $1,000 paid for the option was deposited in her private account at the bank, and she still retains the same. These things, together with all of the other testimony in the case, warranted the court in directing a verdict against her for $1,000 and interest.

Since the defendant herein did not sign this contract, her liability arises under the doctrine of undisclosed principal,— rather an anomalous doctrine, but one which has had full recognition under the law of this state in the following cases: *Thurston v. Mauro*, 1 G. Greene (Iowa) 231, which was followed down to *Strohmeier v. Anderson*, 195 Iowa 828. Apparently our latest pronouncement thereon is *Collentine v. Johnson*, 203 Iowa 109.

Under the defendant's own testimony, she shows that she

was the undisclosed principal of her husband in this contract. On top of this is the further showing that she received the benefit of the $1,000 which was paid down on the option, and that, until the filing of her denial in this case, she never denied the authority of her husband to enter into this contract. So far as the record shows, she still retains the $1,000 down payment. This being the situation, with the full knowledge of the facts, she certainly ratified this contract, and it is now too late for her to question the agency of her husband in making the contract.

As to the item of $498.34, the court sent this question to the jury, and it returned a verdict for the defendant, which, as above stated, was set aside later, and a new trial granted as  to this item. The appellant insists that the court erred in setting aside this verdict of the jury on this latter claim. As heretofore suggested, it is shown that there were numerous misrepresentations made by H. R. Chapman in the transaction of selling this option. There was a vast difference between the number of shares of both common and preferred stock as stated by him and the actual facts in relation thereto. There was also a misrepresentation as to the annual gross income from the property.

It is undisputed that Brownell advised H. R. Chapman that an audit of the books of the company was necessary, to determine whether or not the option should be exercised, and the report of the certified accountant is set out and receipted for. The question of the right of the plaintiff to recover on this last item was sent to the jury under instructions, and it found for the defendant thereunder; whereupon the plaintiff filed a motion for a new trial, on the grounds that the verdict of the jury was not sustained by the evidence, was the result of passion and prejudice, and contrary to the instructions and contrary to law. This motion for a new trial was sustained with respect to the claim for auditing expenses,—to which the defendant excepted.

Our rule as to the discretion of the trial court in granting a new trial is so well settled in this state that we rarely disturb such a ruling. Of course, where the record is such that it is shown that the court abused his discretion in granting a new trial, we will not hesitate to reverse the court; but we have read

the record carefully, and are not disposed to disturb the ruling of the court in this matter.

The questions thus disposed of are the only ones that have any material bearing or force in this case, and they are controlling.—*Affirmed.*

MORLING, C. J., and STEVENS, FAVILLE, and WAGNER, JJ., concur.